

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT COURT

| | |
|---|---|
| LISA MICHELLE DOMINICK | CIVIL ACTION NO. 10-619 |
| VERSUS | JUDGE TRIMBLE |
| THE BATON ROUGE CLINIC, AMC | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendant The Baton Rouge Clinic, AMC ("BRC").[1] BRC's motion seeks dismissal of all claims against it by plaintiff, Lisa Michelle Dominick ("Plaintiff"). For the reasons expressed herein, the court finds that BRC's motion should be GRANTED.

I.  RELEVANT FACTS

Plaintiff alleges that she was fired from her job as a scheduler with BRC in retaliation for attempting to exercise her rights under the Family Medical Leave Act ("FMLA" or "Act"), 29 U.S.C. § 2601, et seq. Plaintiff asserts claims both for retaliation and for interference with the exercise of her FMLA rights.

Plaintiff was hired as a scheduler by BRC on or about October 17, 2005.[2] Plaintiff's job was to schedule appointments by phone for patients at BRC.[3] Plaintiff was counseled several times concerning scheduling errors she made.[4] She was also written up for falsifying a

---
[1] R. 26.
[2] R. 1 at ¶ 3. The court notes that plaintiff's memorandum in opposition contradicts her complaint in that it alleges that she was initially hired as a medical records clerk and later transferred to her more recent position as a scheduler. See R. 31-2 at p. 2.
[3] R. 31-2 (Plaintiff's mem. in opp. to BRC mtn.) at p. 2.
[4] Id.

1

physician's excuse for a patient in June of 2009.[5] As a result of this incident, plaintiff was issued a "final warning for any and all disciplinary actions[.]"[6] Also in June of 2009, plaintiff was counseled concerning inaccuracies on a leave slip.[7] She met with her supervisors in June of 2009 and expressed concern that she would be fired for these incidents.[8]

Plaintiff was seen by Dr. Kelly Clements on July 10, 2009 for complaints of ear pain. Dr. Clements diagnosed plaintiff with high frequency hearing loss and recommended the use of hearing aids or an amplifier.[9] Plaintiff informed Naomi Devall, her immediate supervisor, of her diagnosis.[10] A double headset was added to the amplifier already in place on plaintiff's phone.[11] Plaintiff did not feel that these devices helped her hearing and asked BRC if she could obtain hearing aids through the clinic and have the cost deducted from her paycheck over time.[12] This request was denied.[13]

Plaintiff was seen by Dr. Joseph Albergamo, her primary care physician, on August 21, 2009. Plaintiff described her hearing problems and told Dr. Albergamo that she could not perform the necessary tasks of her job because of her hearing loss. Dr. Albergamo wrote an excuse stating that the plaintiff "needs to be off work indefinitely due to hearing problems."[14] Plaintiff requested FMLA leave with the BRC Human Resources Department on the same date.[15]

---

[5] Id. The court notes that plaintiff denies falsifying any physician's excuse.
[6] Id.
[7] R. 31-2 at p. 3.
[8] Id.
[9] Id.; R. 31-3 at p. 66.
[10] R. 31-2 at p. 3.
[11] Id.
[12] Id.
[13] Id.
[14] Exhibit "H" to plaintiff's memo. in opp. [R. 31-3 at p. 67].
[15] Exhibit "I" to plaintiff's memo. in opp. [R. 31-3 at p. 68].

2

A BRC FMLA leave calendar form, attached as Exhibit "I" to plaintiff's memorandum in opposition, states that FMLA leave was granted as of August 21, 2009.[16]

On or about August 31, 2009, Dr. Albergamo completed a "Certification of Health Care Provider for Employee's Serious Health Condition" provided to him by BRC.[17] Dr. Albergamo's certification form reflected a diagnosis of high frequency hearing loss and rendered the opinion that plaintiff could work with the use of hearing aids or phone amplifier.[18] After receiving the completed certification form from Dr. Albergamo, Nicole Rome ("Rome"), BRC Human Resources Manager, contacted Dr. Albergamo on September 11, 2009 and spoke to him to obtain clarification as to his opinion concerning whether or not plaintiff could perform the tasks of her job.[19] Based on that conversation, Rome contacted plaintiff and informed her that she was not approved for FMLA leave and would need to return to work on September 14, 2009.[20]

Plaintiff alleges that, during her time away from work, she was working to find financial assistance for purpose of getting hearing aids, which she felt were her only hope of improving her job performance, given that the amplifier and double headset she tried were not allowing her to hear patient calls properly.[21] Plaintiff also alleges that, despite Rome's instruction, she believed that she was participating in approved FMLA leave.[22] For these reasons, plaintiff chose not to return to work and, on September 16, 2009, BRC terminated plaintiff's employment.[23]

---

[16] Id.
[17] R. 31-3 at pp. 69-75.
[18] Id.
[19] Id.
[20] Exhibit "L" to plaintiff's memo. in opp. [R. 31-3 at p. 84].
[21] R. 31-2 at pp. 4-5.
[22] Id.
[23] Id.

## II. PROCEDURAL HISTORY

Plaintiff filed suit against her former employer BRC on or about September 16, 2010 in this federal district court, asserting claims for both interference with exercise of FMLA rights and retaliatory discharge motivated by plaintiff's attempt to exercise such rights.[24] Plaintiff seeks damages constituting lost wages plus interest, liquidated damages and future wages, as well as all reasonable attorney fees and costs associated with this litigation. The case was transferred to the docket of the undersigned and United States Magistrate Judge James D. Kirk on August 29, 2011.[25]

BRC's motion was filed on October 17, 2011.[26] A briefing extension and filing deficiency have delayed the consideration of BRC's motion until present.[27] Having received all necessary briefs, the court finds the motion ripe for disposition.

This matter is currently fixed as a first setting bench trial before the undersigned on March 12, 2012.[28]

## III. APPLICABLE STANDARD

Summary judgment should be granted when the movant demonstrates, by admissible evidence, that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[29] If the claim at issue is one as to which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its initial burden by filing affidavits or other evidence negating the claim or may point out the absence of evidence necessary to the nonmoving party's prima facie case. Once the movant carries its initial burden,

---

[24] R. 1 at ¶ 10.
[25] R. 21.
[26] R. 26.
[27] R. 29, 31.
[28] R. 28.
[29] Fed. R. Civ. P. 56(a), (c); Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994) citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

the burden shifts to the nonmoving party to show that, indeed, issues of material fact remain which preclude entry of summary judgment.[30] Although the court will construe all well-pled facts in favor of the nonmoving party, such party does not satisfy this burden by arguing some "metaphysical doubt as to the material facts" or by way of "conclusory allegations" or "unsubstantiated assertions."[31]

IV. ANALYSIS

A. Interference Claim

The FMLA prohibits an employer from interfering with, restraining or denying the exercise or attempted exercise of an employee's rights provided under the Act.[32] In this suit, plaintiff claims that BRC interfered with the exercise of her right to leave of employment under the FMLA and, therefore, violated the Act and should be held liable to her for damages as provided therein.

BRC's motion asserts that plaintiff's FMLA interference claim fails as a matter of law because plaintiff is unable to demonstrate the necessary elements of that claim. A plaintiff alleging interference with FMLA rights must first establish that her requested leave was protected under the Act.[33] The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12 month period...[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such

---

[30] Lavespere v. Niagra Mach.
[31] Matsushida Electric Industrial Co. v. Zenith Radio Corp., 475 U.S 574, 586 (1986); Lujan v. National Wildlife Federation, 497 U.S. 871, 871-73 (1990); Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994).
[32] 29 U.S.C. §2613.
[33] Ford-Evans v. United Space Alliance, LLC, 329 Fed. Appx. 519 (5th Cir. 2009); Comeaux-Bisor v. YMCA of Greater Houston, 290 Fed. Appx. 722 (5th Cir. 2008); Bacalbos v. Nat'l. Western Life Ins. Co., 162 F.3d 379 (5th Cir. 1998).

employee.[34] BRC asserts that plaintiff did not suffer from a "serious health condition that makes the employee unable to perform the functions of the position of such employee."

Plaintiff argues that she discovered that she had high frequency hearing loss in July of 2009, constituting a serious health condition and leaving her unable to perform the functions of her position as a scheduler, which required her to answer telephones and schedule appointments for patients.[35]

BRC asserts that a plaintiff claiming FMLA protection for her own "serious health condition" must show that she was being treated with inpatient care or was undergoing continuing treatment by a health care provider.[36] Since plaintiff does not claim hospitalization, her claim is one of "continuing treatment." BRC points out that, in order to satisfy the "continuing treatment" standard, plaintiff must demonstrate a period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(1) treatment two or more times within 30 days of the first incapacity; or
(2) treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.[37]

BRC asserts that plaintiff is unable to meet these threshold requirements because she was never "incapacitated" as that term is defined by applicable regulations. 29 C.F.R. § 825.113(b) defines "incapacity" as the "inability to work, attend school or perform regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom."

Plaintiff argues that her hearing loss does constitute a serious health condition because her hearing impairment prevented her from hearing patients clearly and led to her making

---

[34] 29 U.S.C. § 2612(a)(1)(D).
[35] R. 31-1 at p. 3.
[36] 29 C.F.R. § 825.113.
[37] 29 C.F.R. § 825.115.

6

numerous mistakes when taking down their names, addresses and telephone numbers. In this way, she argues she was "unable to perform the functions of the position of such employee" and meets the criteria of a serious health condition.

As cited above, "serious health condition" is a defined term within the FMLA and, therefore, plaintiff must meet the technical definition of that term in order to satisfy the threshold requirement of protection under the Act. Plaintiff's memorandum in opposition does not address the technical definition of this term. Plaintiff has demonstrated no consecutive days of incapacity and no continuing treatment thereafter. Plaintiff saw Dr. Clements on July 10, 2009 and, after receiving the diagnosis of high frequency hearing loss, continued to report to work until August 21st, when she visited her primary care physician, Dr. Albergamo.[38] Taking these facts in consideration, the court has no basis upon which to make a finding that plaintiff was incapacitated within the meaning of the FMLA, as her hearing loss did not prevent her from going to work.

While plaintiff's prior disciplinary history and her reports of frequent errors were, no doubt, motivating factors in her desire to seek out financial aid so she could purchase hearing aids, those factors are not valid qualifications for FMLA leave. Although, taking plaintiff's allegations as true that her work performance was diminished by her hearing loss, the court finds that there is no evidence before it to suggest that plaintiff was rendered unable to work by such condition. Accordingly, we conclude that plaintiff has failed to demonstrate the threshold element of being entitled to leave under the FMLA. We also find, therefore, that plaintiff's FMLA interference claim fails as a matter of law.

---

[38] R. 31-1 at pp. 3 – 4.

B. Retaliation Claim

In order to demonstrate a prima facie case of retaliation under the FMLA, plaintiff must show that:

(1) she was protected under the FMLA;
(2) she suffered an adverse employment decision; and, either
(3)(a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or
(3)(b) the adverse employment decision was made because she took FMLA leave.[39]

Finding as we have, above, that plaintiff did not suffer from a serious health condition and was not, therefore, protected under the FMLA, we now find that plaintiff's retaliation claim also fails as a matter of law.

IV. CONCLUSION

The plaintiff's own testimony and applicable law demonstrate that plaintiff did not, at the time in question, suffer from a "serious health condition" as that term is defined in the FMLA. For that reason, plaintiff is unable to demonstrate the threshold element of being protected by the Act. Accordingly, both plaintiff's interference and retaliation claims fail as a matter of law.

The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
February ⎯7⎯, 2012

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[39] Elsensohn v. St. Tammany Parish Sheriff's Office; 530 F.3d 368 (5th Cir. 2008); Hunt v. Rapides Healthcare System, LLC, 277 F.3d 757 (5th Cir. 2001).